BYRON GREEN v. JOHN F. E. KNOCH AND E. ROSALIE
KNOCH.

*Real-estate agent—Contract of purchase—Public policy.*

An agent for a land-owner owes to him the duty of securing the
best price obtainable for the land, and he cannot obtain a
valid contract of purchase to which he himself is secretly a
party, such dealing being against public policy; citing
*Scribner v. Collar*, 40 Mich. 376.

Appeal from Wayne. (Brevoort, J.) Argued May 11
and 12, 1892. Decided May 20, 1892.

Bill for specific performance of contract. Complainant
appeals. Decree affirmed. The facts are stated in the
opinion.

*H. E. Spalding (John D. Conely,* of counsel), for
complainant.

*James H. Pound,* for defendants.

MONTGOMERY, J. This is a bill for specific perform-
ance of an option contract, signed by the defendant
John F. E. Knoch, and bearing date the 3d of April,
1890, which reads as follows:

"In consideration of one dollar, to us in hand paid,
the receipt of which is hereby acknowledged, we agree
to sell to Byron Green the following described property,
to wit [here follows the description], containing 17.79
acres, for the sum of nine hundred dollars per acre;
five thousand dollars cash, and the balance on or before
five years, on mortgage, at six per cent. per annum,
interest annually. It is agreed that Knoch can reserve
the house, barn, and one and one-half or two acres, as
he may desire. He reserves the vegetables planted.
The grantor agrees to release one or more lots, provided

buyer pays a *pro rata* of the mortgage,—and to convey the same to said Green at any time on or before twelve o'clock the first day of May next, and give a good and sufficient warranty deed, free and clear of all incumbrances and liens, and to furnish Burton's abstract of title thereto from the government.

"Witness our hands and seals this third day of April, 1890.

[Signed] "JOHN F. E. KNOCH."

Subsequently an extension was indorsed in these words:

"We hereby agree to extend this option to May 15, 1890.

[Signed] "JOHN F. E. KNOCH.
"E. ROSALIE KNOCH."

The defendant Mrs. Knoch claims that this extension was signed under a misapprehension, and that she understood that she was simply signing a permission to plat the land. The circuit judge found that she did not understand that she was signing away her rights, and held that, inasmuch as it is discretionary with a court of chancery to order or refrain from ordering the specific performance of a contract, the relief in this case should be denied.

We prefer, however, to rest our decision on other grounds. W. W. Hannan was produced as a witness for complainant, and testified that during the winter of 1889 and 1890 he had met the defendant Knoch several times, and talked about the property in question; that at these different times the defendant had manifested a desire to sell his property, and on several different occasions had told witness what he thought the property ought to bring, and finally concluded to sell this property at $900 per acre. He further testified as follows:

"*Q.* He put it into your hands conformable to those terms?
"*A.* Yes."

On the 3d of April the paper above referred to was obtained from defendant John F. E. Knoch by the witness Hannan. Hannan testified that the Green named in the paper was his father-in-law, and employed in his (Hannan's) office; and, further, that he (Hannan) had a personal interest in the matter, and also that he had brought a suit against Mr. Knoch for a commission on this sale. There were also letters introduced passing from Hannan to one D. F. Cook, of Maumee, Ohio, which indicate that the purchase was made in the joint interests of Cook and Hannan. Mr. Hannan was asked on cross-examination:

"*Q.* Why didn't you tell him, Mr. Hannan, that Byron Green was your father-in-law, and worked in your office?
"*A.* What difference did that make?
"*Q.* Why didn't you?
"*A.* I don't know why I should go into something foreign to the business; that was not necessary."

So that it appears that this option contract was signed with the understanding that Mr. Hannan was acting for Mr. Knoch; and it also appears that Hannan himself had an interest in the purchase, and that he did not disclose that interest to the defendant.

We have not overlooked the testimony to which attention has been directed by the complainant, which is claimed to show that the defendants understood that they were making the sale to Hannan; but, while language may be found in the course of the testimony which would tend to support this claim, yet the fact that Mr. Hannan did not take the option in his own name, the fact that his own testimony shows that the property was placed in his hands for sale, and that he did not disclose his interest, induce the belief that these defendants did not understand that Hannan was acting for himself in making this purchase. While no actual fraud may

have been intended, yet, as Mr. Hannan was the defendants' agent, and owed to them the duty of obtaining the best price which could be obtained, he could not obtain a valid contract to which he himself was secretly a party. Such dealing is against public policy. *Scribner v. Collar*, 40 Mich. 376.

The decree below will be affirmed, with costs.

The other Justices concurred.